| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:18-CR-132(5) |
| | § | |
| FRANCISCO NAVA MONDRAGON | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Francisco Nava Mondragon's ("Mondragon") *pro se* Letter Motion (#160), which the court will construe as a request for compassionate release. Mondragon contends that he has various medical conditions for which he is not receiving treatment and requests that the court grant him "The Clemency." United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. The Government filed a response in opposition (#163). Having considered the motion, Probation's recommendation, the Government's Response, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On August 8, 2018, the United States Grand Jury for the Eastern District of Texas returned a one-count Indictment charging Mondragon and four co-defendants with Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846. On November 29, 2018, pursuant to a non-binding plea agreement, Mondragon entered a plea of guilty. In his Factual Basis, as confirmed by his Presentence Investigation Report ("PSR"), Mondragon admitted that he knew the amount involved during the term of the conspiracy was at least 5 kilograms but less than 15 kilograms of a mixture or substance containing a detectable amount of cocaine. He further stipulated that his role in the conspiracy was to safeguard currency which would be used by

co-conspirators to purchase kilogram quantities of cocaine for further distribution in the Eastern and Northern Districts of Texas. On April 3, 2019, Mondragon was sentenced to 57 months' imprisonment, followed by a 5-year term of supervised release. Mondragon is currently housed at CI Reeves I & II ("Reeves"), a contracted correctional institution in Reeves County, Texas. Mondragon requests that the court grant him clemency because he purportedly had a heart attack earlier this year and he claims to suffer from an infection on his right leg, diabetes, high cholesterol, and high blood pressure. Mondragon further maintains that he is not receiving needed medical treatment. The Government asserts that Mondragon's request for clemency must be denied because the courts are not authorized to grant clemency. Probation points out that Mondragon, who was previously convicted of illegal entry of the United States, has an active Immigration and Customs Enforcement ("ICE") detainer, which makes him ineligible for community-based programs, including home confinement and compassionate release.

II.     Analysis

   A.     Mondragon's Request for Clemency

The court's authority to reduce or modify a sentence is limited once a sentence of imprisonment has been imposed. *Dillon v. United States*, 560 U.S. 817, 819 (2010); *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020); *United States v. Banks*, 770 F.3d 346, 348 (5th Cir. 2014); *United States v. Hernandez*, 645 F.3d 709, 711 (5th Cir. 2011). Pursuant to 18 U.S.C. § 3582(c), a district court is authorized to modify a previously imposed term of imprisonment only under the following circumstances: (1) when the court receives a motion from the Director of the Bureau of Prisons ("BOP"), or under certain circumstances, a motion from the defendant, indicating that there are extraordinary and compelling reasons warranting a reduction and that

reduction is consistent with applicable policy statements issued by the Sentencing Commission; (2) when the district court, pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure, acting within 14 days after the imposition of sentence, wishes to correct an arithmetical, technical, or other clear error identified in a previously imposed sentence; (3) when the defendant has provided substantial assistance and the government moves for a sentence reduction; or (4) when the defendant has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c); *see Banks*, 770 F.3d at 348; *United States v. Meza*, 620 F.3d 505, 507 (5th Cir. 2010).

Here, Mondragon requests "The Clemency" due to his purported medical conditions. Courts, however, do not have the authority to reduce a previously-imposed sentence based on "clemency." Under the Constitution, the President—not the courts—has the power to grant clemency, ordinarily in the form of a pardon or commutation. U.S. CONST. art. II, § 2, cl. 1 ("The President . . . shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment."). The clemency process is overseen by the Pardon Attorney at the Department of Justice ("DOJ"), who reports to the Deputy Attorney General, to whom the oversight of the clemency process and recommendations to the President has been delegated by the Attorney General. 28 C.F.R. §§ 0.35-0.36 (2014).[1] Thus, Mondragon's request for clemency is denied because the court is without the authority to grant that type of relief.

---

[1] The Office of the Pardon Attorney provides extensive information regarding the application process, and advisory guidance is provided in 28 C.F.R. pt. 1 and the Justice Manual. U.S. DEP'T OF JUST., JUSTICE MANUAL §§ 9-140.112, 9-140.113 (2018), http://www.justice.gov/jm/justice-manual.

Mondragon fails to identify a valid procedural basis for his request. Nevertheless, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *accord Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) ("filings of a *pro se* litigant are 'to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"); *Thorn v. McGary*, 684 F. App'x 430, 432 n.2 (5th Cir. 2017) ("We liberally construe briefs of pro se litigants.") Because a *pro se* litigant's motion is not always what it purports to be, a court may sometimes recharacterize a motion that is labeled differently. *See United States v. Elam*, 930 F.3d 406, 409 (5th Cir. 2019) (citing *Castro v. United States*, 540 U.S. 375, 377 (2003)); *Hopes v. Davis*, 761 F. App'x 307, 309 (5th Cir. 2019); *United States v. Bledsoe*, 548 F. App'x 124, 124 (5th Cir. 2013) ("[I]t is the essence of a pro se prisoner's pleading, rather than the label attached to it, that controls how that pleading is characterized." (citing *United States v. Santora*, 711 F.2d 41, 42 n.1 (5th Cir. 1983))). The court's decision to recharacterize a motion is discretionary. *Elam*, 930 F.3d at 409 (citing *Santora*, 711 F.2d at 42).

Mondragon raises health concerns as the reason for his clemency request. Therefore, the court will liberally construe Mondragon's *pro se* letter as a motion for compassionate release under 28 U.S.C. § 3582(c)(1)(A) for health-related reasons. *See United States v. Cantu*, 423 F. Supp. 3d 345, 346 (S.D. Tex. 2019) (construing a *pro se* letter motion requesting home confinement as a motion for compassionate release).

B.     Compassionate Release

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the

defendant's behalf.  *Cantu*, 423 F. Supp. 3d at 347; *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 833-34; *Raia*, 954 F.3d at 597.

Here, Mondragon is foreclosed from obtaining relief because he has not submitted a request for compassionate release to the warden of the facility where he is housed.  Probation reports that Mondragon has not submitted any formal or informal request, nor has he verbally requested information from the BOP, regarding consideration for compassionate release.  *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the

Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Moreover, even if Mondragon had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in

18 U.S.C. § 3553(a),[2] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Here, according to Mondragon's PSR, he is 52 years old and his medical history includes hypertension, depression, gout, and arthritis. Probation reports he is receiving treatment for type 2 diabetes, hypothyroidism, and hypertension. Mondragon also claims that he suffered a heart attack when he arrived at Reeves and that he has an unidentified infection in his right leg as well as high cholesterol. According to Probation, the BOP Facility Administrator indicated that Mondragon did not have a cardiac event at Reeves in early 2020 and

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

has never been transported outside the facility for medical treatment to the local hospital or any other clinics for care. Probation also notes that Mondragon has been seen in medical services for complaints of foot pain, but there is no indication or diagnosis of an actual infection. It appears that Mondragon is ambulatory, maintains a job assignment as a general orderly in his housing unit, and remains in general population. Thus, his medical summary does not meet the criteria listed above. None of these medical conditions is terminal or substantially diminishes his ability to provide self-care.

Therefore, Mondragon's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Mondragon for any reason. Moreover, in exercising its discretion, the court finds that no extraordinary and compelling reasons exist in relation to Mondragon's situation. Although Mondragon may have legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Mondragon, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). In fact, Probation reports that no inmates or staff have tested positive for the virus at Reeves. Hence, Mondragon has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to

reduce his sentence to time served and warrant his release from imprisonment. Furthermore, the court cannot conclude that he would not pose a danger to any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 4,670 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the DOJ has an obligation to protect both BOP personnel and inmates. He also

11

notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)).

In short, Mondragon has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot

release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

III.   Conclusion

Consistent with the foregoing analysis, Mondragon's *pro se* Letter Motion (#160) is DENIED.

SIGNED at Beaumont, Texas, this 8th day of July, 2020.

                                    */s/ Marcia A. Crone*
                                    MARCIA A. CRONE
                              UNITED STATES DISTRICT JUDGE