| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:18-CR-132 (5) |
| | § | |
| FRANCISCO NAVA MONDRAGON | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Francisco Nava Mondragon's ("Mondragon") *pro se* Motion for Compassionate Release (#168), wherein he requests compassionate release based on his medical condition. The Government filed a response in opposition to the motion (#172), to which Mondragon replied (#176). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Mondragon's motion for compassionate release. On June 8, 2020, Mondragon filed his initial Motion for Compassionate Release (#160), seeking clemency and release from imprisonment on the basis of his various medical conditions. On July 8, 2020, the court denied Mondragon's Motion for Compassionate Release (#164) because he failed to exhaust his administrative remedies and, alternatively, his claimed medical conditions—namely an infection in his right leg, diabetes, high cholesterol, and high blood pressure—did not constitute an extraordinary and compelling reason warranting his release from imprisonment. Having considered the pending motion, the Government's response, Mondragon's reply, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On August 8, 2018, a grand jury in the Eastern District of Texas returned an Indictment charging Mondragon and four codefendants in Count 1 with Conspiracy to Possess with the Intent to Distribute 5 Kilograms or More of a Mixture Containing a Detectable Amount of Cocaine in violation of 21 U.S.C. § 846.  On November 29, 2018, pursuant to a non-binding plea agreement, Mondragon pleaded guilty to Count 1 of the Indictment.  On April 4, 2019, the court sentenced Mondragon to 57 months' imprisonment, followed by a 5-year term of supervised release. Immigration and Customs Enforcement has lodged a detainer against him due to his alien status. At the time Mondragon filed the instant motion, he was housed at Correctional Institution Reeves I and II ("CI Reeves"), a contracted correctional institution located in Pecos, Texas.  On February 26, 2021, Mondragon was transferred to Federal Correctional Institution Bastrop ("FCI Bastrop"), located in Bastrop, Texas, where he is currently housed.  His projected release date is July 31, 2022.

II.   Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the

>  extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, ___ U.S. ___, No. 20-5997, 2020 WL 7132458 (Dec. 7, 2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*,

954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this instance, Mondragon has exhausted his administrative remedies. On July 7, 2020, Mondragon submitted a request for compassionate release to the warden of CI Reeves, where he was housed at the time. On July 16, 2020, the warden responded to Mondragon, stating that Mondragon was ineligible for compassionate release "based on the requirements for consideration set forth by the [BOP]." Specifically, the warden stated that Mondragon has an active Immigration Customs Enforcement Detainer, making him ineligible for compassionate release. Although Mondragon complied with the exhaustion requirement before filing the instant motion,

nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment or to release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

  A.  Medical Condition

In the instant motion, Mondragon, age 53, contends that he is eligible for compassionate release due to his medical condition—specifically, that he suffers from hypertension, obesity, heart complications, and diabetes. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

When Mondragon was interviewed in connection with his Presentence Investigation Report ("PSR"), prepared in February 2019, he reported that he suffered from arthritis, heart problems, and back issues. He stated that he felt pain everywhere. According to his PSR, Mondragon went to the hospital for chest pains on July 12, 2018, and was discharged that same day. His PSR also notes that he had a cyst removed from his back on August 28, 2018. Mondragon's medical records from the Fannin County Jail, where he was housed prior to sentencing, reflected that Mondragon was treated for hypertension, depression, gout, and arthritis for which he was prescribed medication.

Mondragon's BOP records confirm that he suffers from hypertension, diabetes, and obesity.  According to a medical record dated December 5, 2020, Mondragon has been diagnosed with hypertensive heart disease without heart failure and Type 2 diabetes mellitus with hyperglycemia.  Mondragon's essential hypertension and Type 2 diabetes mellitus, however, are characterized as mild.  Indeed, at an examination on December 5, 2020, he was found to have "good control" of his diabetes and a "good reading" on his hypertension.  To treat these conditions, Mondragon was prescribed daily medications, including lisinopril, atorvastatin, and hydrochlorothiazide for his hypertension and glyburide and metformin for his diabetes.  Moreover, Mondragon's medical records confirm that he is obese.  Mondragon is 5 foot, 9 inches tall and weighed 218 pounds in December 2020, giving him a body mass index ("BMI") of 32.2, which is greater than the threshold for obesity of a BMI of 30, under the Centers for Disease Control and Prevention's ("CDC") guidelines.  Notes of a March 2, 2021, clinical encounter reflect that Mondragon now weighs 220 pounds, which slightly increases his BMI to 32.5.

Mondragon states that he also suffers from heart complications, but there is no evidence of such an affliction—aside from his hypertension—in his medical records.  Indeed, when he was examined on December 5, 2020, it was noted that his heart was "normal."  His medical records indicate that Mondragon also suffers from cellulitis of the right lower limb and subclinical hypothyroidism; in addition, he recently had a nonspecific reaction to a skin test.  Mondragon's current prescriptions include:  glyburide-metformin and metformin to treat his diabetes; nortriptyline HCl for pain management; lisinopril and hydrochlorothiazide to treat his hypertension/fluid retention; and atrovastatin to control his cholesterol levels.  Furthermore, it appears from Mondragon's intake screening on February 26, 2021, that he tested negative for

COVID-19, reported no "cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, nausea or vomiting," and has no history of COVID-19, which is contrary to assertions in his motion that he previously suffered from COVID-19 symptoms.

Mondragon's medical records further reveal that he is classified as a medical Care Level 2 inmate. According to the BOP Clinical Practice Guidance dated May 2019:

> Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time.

Accordingly, Mondragon's medical summary does not meet the criteria listed above. None of these medical conditions are terminal or substantially diminish his ability to provide self-care. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021). To the contrary, Mondragon's health problems are well managed with medication. *See id*. The court acknowledges that some of Mondragon's underlying medical conditions, according to the CDC, place him at a higher risk of severe symptoms should he contract COVID-19[2]; nonetheless, such commonplace maladies (obesity, hypertension, and diabetes) do not make Mondragon's case "extraordinary." *See id*. at 434. According to the CDC, 42.5% of the adult population in the United States is obese, 73.6% is overweight, and nearly half has hypertension. In addition, the CDC reports that 34.2 million people in the United States, approximately 10.5% of the population, have diabetes. Of those, 90 to 95% have Type 2 diabetes. Due to their prevalence, obesity, hypertension, and diabetes cannot be deemed "extraordinary" in order to merit compassionate release. *Thompson*, 984 F.3d at 434

---

[2] In relevant part, the CDC states that adults with obesity and Type 2 diabetes mellitus are at an increased risk of severe illness, while adults with hypertension might be at an increased risk for severe illness.

(noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *see United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *United States v. Williams*, No. CR 15-83-SDD-EWD, 2021 WL 414825, at *3 (M.D. La. Feb. 5, 2021) (denying compassionate release to inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care within the facility); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Cotto*, No. CV 16-36, 2020 WL 5761192, at *2 (E.D. La. Sept. 28, 2020) (recognizing the seriousness of diabetes and obesity but denying compassionate release because inmate had not shown that he was unable to take care of himself within the confines of the facility or that BOP could not manage his medical conditions appropriately in view of medical records showing that he was being administered the necessary care); *United States v. Dressen*, No. 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) (denying compassionate release because the defendant did not identify "how his Type 2 diabetes prevents him from providing self-care in a correctional facility setting or how it amounts to extraordinary

and compelling circumstances"); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"); *United States v. Jeffers*, 2020 WL 3100842, at *6-7 (N.D. Iowa June 11, 2020) (finding that the defendant had not demonstrated extraordinary and compelling circumstances when his diabetes and hypertension were controlled, monitored, and managed by the BOP). In fact, Mondragon's BOP records reveal that he is ambulatory, has no medical restrictions, has regular duty work assignments, and is cleared for food service. Thus, Mondragon has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.

Even if Mondragon's medical conditions constituted an extraordinary and compelling reason under § 3582(c)(1)(A), "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Furthermore, granting Mondragon compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Mondragon after he has served only 32 months (or approximately 62%) of his 57-month sentence would similarly minimize the impact of his crime and the seriousness of his offense.

B.  "Other" Reasons

Mondragon's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the

11

BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Mondragon for any "other" reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Mondragon's situation.

Mondragon expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of March 11, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,310) and 36 staff members at FCI Bastrop as having confirmed positive cases of COVID-19, 453 inmates and 6 staff members who have recovered, and 1 inmate who has succumbed to the disease. Thus, it appears that the facility where Mondragon is housed is handling the outbreak appropriately and providing adequate medical care.

Although Mondragon expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the

12

facility is specifically unable to treat Mondragon, if were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Woods*, No. 4:11-CR-106-SDJ, 2020 WL 6391591, at *4 (E.D. Tex. Nov. 2, 2020) (noting that "courts have concluded that an inmate's concerns about risks associated with the spread of COVID-19 are not consistent with the policy statement of the Commission as required by Section 3582(c)(1)(A)"); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to

establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Therefore, Mondragon has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served.

  C. Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. Mondragon's offense of conviction stems from his participation in a drug-trafficking organization that distributed significant quantities of cocaine in the north Texas area.

On July 11, 2018, the Drug Enforcement Administration ("DEA"), using a cooperating source ("CS"), conducted a controlled purchase of 2 kilograms of cocaine from Mondragon's codefendant and nephew, Mariano Correa-Mondragon ("Correa"). During the purchase, DEA agents observed Mondragon retrieve a heavy item from a vehicle in the driveway of Correa's house and take the item into the residence. Correa and another codefendant, Jose Morelos-Diaz ("Morelos"), were later observed exiting the residence, placing a heavy-weighted bag into a truck, then leaving the residence and heading to the location of the CS. Police officers conducted a

traffic stop of Correa and Morelos in Dallas, leading to their arrest and the seizure of $54,064 in United States currency.

After Mondragon's codefendants left the residence, DEA agents noticed Mondragon exit the house and begin pacing in the driveway. When agents contacted Mondragon, he claimed that he was waiting for his nephew, "Juan Gonzalez," to come home. When the agents stated that they knew his nephew was Correa, Mondragon admitted that he had lied, but he still denied knowing Morelos. This, too, was false as the agents' search of Mondragon's cell phone revealed calls between him and an individual identified as "J," who was later determined to be Morelos. A search of Correa's residence revealed $168,340 in United States currency and suspected drug ledgers. Mondragon admitted that he knew that the conspiracy involved the distribution of between 5 and 15 kilograms of cocaine. He further stipulated that his role in the conspiracy was to safeguard currency which would be used by his coconspirators to purchase kilogram quantities of cocaine from various sources for distribution in the Eastern and Northern Districts of Texas.

Mondragon also has a prior conviction for illegal entry. In addition, there is an immigration detainer lodged against him due to his illegal presence in the United States. In view of the nature and circumstances of his offense of conviction, the court cannot conclude that Mondragon would not pose a danger to any other person or to the community, if released from prison.

III.   Conclusion

In short, Mondragon has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020)

(stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Mondragon's *pro se* Motion for Compassionate Release (#168) is DENIED.

SIGNED at Beaumont, Texas, this 12th day of March, 2021.

                                   Marcia A. Crone
                          MARCIA A. CRONE
                      UNITED STATES DISTRICT JUDGE